## GILBERT S. LINES v. FRANK A. WILSON.[1]

### January 28, 1921.

### No. 22,069.

**Partnership—absence of fraud—finding sustained.**

1. The evidence sustains the finding, that the contract for settlement of the partnership between plaintiff and defendant was not procured by fraudulent misrepresentations of plaintiff.

**Same — consideration for transfer of interest.**

2. Soon after the partnership started defendant paid plaintiff $1,000 for one-half interest in the equity in the store wherein the business was conducted, but received no writing evidencing the purchase. In the dissolution contract defendant transferred all his interest in this real estate to plaintiff. It is *held* that the consideration for the transfer is found in the terms of the contract, and the evidence does not require a finding that plaintiff promised to repay or refund the $1,000.

**Contract construed.**

3. The contract construed in the light of its purpose and the surrounding circumstances is held to transfer to defendant all partnership personal property including moneys on hand or on deposit and outstanding accounts.

Action in the district court for Traverse county to recover $4,000, and for an accounting of a certain partnership business. The case was tried before Flaherty, J., who made findings and ordered judgment in favor of plaintiff for $4,000, with interest, or in lieu thereof that defendant execute his note or notes to plaintiff so secured as to be bankable in Browns Valley; that defendant pay to plaintiff on account of the accounts of the firm collected by defendant the sum of $715.49 and that a receiver be appointed. Defendant's motion to amend the findings was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

[1] Reported in 181 N. W. 202.

*Murphy & Anderson,* for appellant.
*D. J. Leary,* for respondent.

HOLT, J.

Appeal by defendant from a judgment in favor of plaintiff for $5,187.-52 and costs.

Shortly before August 16, 1917, plaintiff had purchased a bankrupt hardware business from a trustee or receiver; also, apparently, the store building in which the business had been conducted. On last named date he sold a one-half interest in the stock, tools and fixtures so purchased to defendant, and the parties were to conduct the business in the same location as equal partners. A few weeks thereafter they agreed to become joint owners of the real estate, and defendant paid plaintiff $1,000 for one-half of the equity therein. On July 6, 1918, prior negotiations for a termination of the relations between the parties resulted in the execution of this contract, Exhibit B, reading:

"This agreement made this 6th day of July, A. D. 1918, between Frank A. Wilson, party of the first part, and Gilbert S. Lines, party of the second part.

"Witnesseth: That whereas said parties have been copartners doing a hardware business in the village of Browns Valley, Traverse county, Minnesota, for several months last past, under the trade or firm name of Browns Valley Mercantile Company, and have mutually agreed to dissolve said partnership, the business to be taken over by said party of the first part, said party of the second part retiring from said firm.

"Therefore, It is hereby agreed that said party of the first part shall take all stock and fixtures connected with said business, including goods in transit, for said firm. In consideration for such transfer said party of the first part hereby agrees to pay said party of the second part the sum of Four Thousand Dollars, in cash, or represented by his note or notes, secured in such a way as to make same bankable in said Browns Valley without discount, due five years from date, which shall be date of transfer, said paper to draw interest at the rate of six per cent per annum, payable annually. Said party of the first part also agrees to assume all obligations of said firm, whether in the form of notes or bills payable, and to save said second party harmless from any liability or expense in connection therewith. Said party of the first part hereby

transfers and assigns to said party of the second part his interest in the building and real estate used for said business, and said party of the second part hereby agrees to save said first party harmless from liability for the mortgage or other encumbrance thereon. All sums owing said firm by either partner on account of cash or goods taken from said business are hereby canceled.

"Each of the parties hereto agree to execute all papers necessary to carry this agreement into full effect.

"Frank A. Wilson,
"G. S. Lines."

Plaintiff worked for defendant for a month after the dissolution, and during that time a misunderstanding arose as to the performance of the contract, defendant claiming that the $1,000 he had paid in upon the real estate should be deducted from the amount he had agreed to pay for the business. This led to plaintiff later asserting that all interest in the partnership did not pass to defendant by the contract.

Plaintiff's first cause of action was to recover the $4,000 named in the contract, and the second cause of action was to recover one-half of the money standing to the credit of the firm in the bank on July 6, 1918, and one-half of the amount collected by defendant upon the accounts then outstanding. Defendant answered that he was induced to enter the contract by plaintiff's fraud, and tendering an accounting and demanding a return of the $1,000 paid for a share in the real estate.

The substantial contentions on this appeal center around the findings that defendant is not entitled to recover the money paid for an interest in the real estate, and that he must pay to plaintiff one-half of the amount collected on the accounts due the partnership at the time of the dissolution. It is true that the finding that no fraud induced defendant to enter the contract also is assailed. The only foundation for the charge of fraud is that plaintiff represented the debts of the partnership to be $5,000, whereas they were in fact $8,500. Two circumstances militate strongly against defendant's right to rescind the contract for fraud. He had the same access to the data from which the debts were ascertained as had plaintiff, and, although plaintiff had most to do with the

books and financial part of the business, it also appears that defendant took a hand in the bookkeeping. And what is of more consequence, after discovering this alleged deception, instead of offering to rescind defendant sold and disposed of the entire business. The evidence fails to show intentional misstatements by plaintiff, and rescission on the ground of mutual mistake was not sought by the answer. The record indicates that the bookkeeping of the parties was loosely done, and neither made any great effort to ascertain the true state of affairs when they severed their business relation. We therefore think Exhibit B, construed in the light of surrounding circumstances, must determine the controverted issues of the case.

Is defendant entitled to offset the $1,000 of his counterclaim upon the $4,000 he contracted to pay plaintiff? The theory of defendant is that this money, paid for an interest in the real estate, may be treated as a loan, since there never was any valid transfer to him of any interest in the property. No writing was ever executed with reference to this purchase of defendant. But by Exhibit B both parties recognized that defendant owned an interest in the real estate, for therein he sold and transferred it to plaintiff. And it is near at hand to assume that the consideration for such sale is found in the terms of the contract, and not in an express or implied promise to refund the original purchase price. Further, had it been intended to refund this $1,000, the natural and simple way of doing it would have been to have made the purchase price in the contract $3,000 instead of $4,000.

Defendant's explanation why the contract did not specify the refund was that plaintiff desired to keep this arrangement from the knowledge of the attorney who was to draw the instrument. The attorney, on the other hand, testified that the parties actually discussed the proposition and came to an agreement, not embodied in the contract, that the $1,000 should be applied on the past and future rent of the store. And subsequently a futile attempt was made by plaintiff to carry out this arrangement. At any rate, there is no room for claiming that the court was required to find that plaintiff, expressly or impliedly, promised to repay

or refund the $1,000, or that plaintiff had violated the agreement made with reference to its adjustment, if one was made. The burden was on defendant to establish this counterclaim, and the court's finding that he failed so to do finds support in the record.

Soon after starting in business the parties began to discuss whether it should not be taken over by one or the other, and finally, after much negotiation, they agreed to sever their relations. They settled on the terms and went to a lawyer to have the agreement properly drawn and executed. No doubt the intention was to completely sever and settle their property rights, assets as well as liabilities. "It is not to be presumed that the parties intended to leave any part of their partnership business unsettled," was said in Burress v. Blair, 61 Mo. 133, in respect to a contract of this sort. The real estate of the firm was to go to plaintiff, he to assume the encumbrances thereon, and the personal property or, in other words, the hardware business with all that pertained thereto, including liabilities, was to be overtaken by defendant. The contract recites that they were in the hardware business as partners, that they have agreed to dissolve, the business to be taken over by defendant, plaintiff retiring. To be sure, when the contract specifies the property to go to defendant no mention is made of moneys or accounts of the firm. Neither is any mention made of tools invoiced at $435.46 and specifically named in the instrument by which defendant acquired his interest in the hardware business. If the tools passed to defendant by Exhibit B, the accounts of the partnership business did likewise. As yet plaintiff makes no claim to tools. It is not to be supposed that any of the partnership property or partnership liability was omitted or left undisposed of by the contract, at least not unless there had been some discussion with reference thereto.

Neither plaintiff nor his attorney, the one who drew Exhibit B, claims that anything was reserved. In fact, the attorney is emphatic that neither the money on hand nor the outstanding accounts were mentioned at all. It is not disclosed whether the attorney knew that the partnership had extended credit, or then had money on hand or in the bank, or that the parties themselves had it in mind other than as included in the hard-

ware business. Plaintiff, in response to a question put to him by the court, said that by Exhibit B he disposed of all the interest he had in the business. And on cross-examination he admitted that he disposed of his interest in the firm to defendant. Defendant was to overtake a going business and pay all obligations thereof, and we think the contract intended to accomplish this result should be construed to cover all property pertaining to the business.

The contract certainly does not contemplate a further settling of partnership affairs, either as to assets or liabilities. In it defendant agreed to pay plaintiff $4,000, and assumed liabilities of twice that amount, and we may say, as did the court in Farnsworth v. Whitney, 74 Me. 370: "It is impossible to believe that the one would pay or the other receive the sum agreed upon, unless all existing claims between them were * * * adjusted and settled." This was said in reference to the personal indebtedness of the partners to the firm, but it is also applicable to other firm assets. In construing a contract transferring the interest of one partner to another in a business, the court, in Albright v. Voorhies, 36 Hun, 437, took into consideration the general purpose and design of the parties and concluded that accounts receivable and the partnership bank deposit were included in the term pertaining to the business, saying: "Upon this subject the rule has been stated to be that, 'in all these cases the court will endeavor to give to the contract a rational and just construction; but the presumption of greater or less strength, according to the language used, or the circumstances of the case, is in favor of the comprehensive over the restricted, the general over the particular, the common over the unusual sense' (2 Pars. on Cont. [6th ed.] 501). And construed in this manner, as this part of the contract seems to be required to be construed, it had the effect of transferring and assigning all the defendant's interest in everything pertaining to or in any way a part of or belonging to the business. And the first clause of the fourth article of the agreement further expressed that to be its intention. The bank account did pertain to the business. It had been made up by deposits of money collected in the course of its transactions, and the outstanding accounts were a part of and belonged to the business, and so did the bank account itself." This conclusion was reached in that case, although the referee had found to the contrary supported by

148 M.—11.

evidence of subsequent conduct and preceding understanding of the parties. See, also, Shuler v. Dutton, 75 Iowa, 155, 39 N. W. 239.

We think the parties themselves construed the contract to cover all assets incident to the business, for evidently the books of the firm containing these accounts were turned over to defendant, and he continued to do business under the name used by the partnership, viz., Browns Valley Mercantile Company. For wages plaintiff remained in the store for a month after the dissolution, doing the same work he had previously done. No new books of account were opened, and, no doubt, plaintiff during his work continued to enter charges against the customers on the same accounts that had run when the partnership existed. There is not a particle of evidence that during this period plaintiff made or suggested a change in the books or in the accounts mentioned. There is no evidence that the money was kept separate, if payments upon these accounts were made during this month. Plaintiff evidently did most of the bookkeeping and attended to the financial end of the business after the dissolution the same as before, for the record discloses that while he worked for defendant he drew most of the checks issued to pay the current bills.

There is no claim that on or prior to signing Exhibit B either of the parties sought to ascertain the amount of the money in the till or in the bank, or the amount or value of the outstanding accounts, or made these subjects a matter of discussion. The court found that plaintiff was not entitled to a share in the bank account. It is clear that this finding was in the main right, for checks were outstanding against this account that would absorb all except $10 thereof. But this small surplus and whatever money was in the till from the day's business stand on the same footing as the accounts. If plaintiff parted with his share in this money he likewise did in the accounts. Defendant having agreed to pay all claims growing out of the business, it was no doubt expected that this was to be done out of all the resources of the partnership business to which he succeeded, including the money then used to operate the business and the accounts on the books. We think, in view of the surrounding circumstances, this contract should be construed to cover all partnership assets and liabilities. It may be added that not until about a month after plaintiff quit defendant's employ, and long after the disagreement

as to the $1,000, does the record disclose that plaintiff made any claim to the money in the bank or the accounts referred to.

It is no legal argument, but it is fair to assume, that plaintiff did not intend to deal overly harsh with his partner. As it turned out the gain was all to him, and the loss to defendant. So far as the record discloses, neither party put any money into the business during the partnership, and plaintiff, in less than a year, received back all the money he paid for the bankrupt property, if we assume that there is an equity in the real estate of $2,000, and he obtains as clear profit the $4,000 defendant must pay under the contract. Defendant, on the other hand, paid out and obligated himself, roughly speaking, in a sum exceeding $17,000, and realized from the whole business a 400 acre farm valued in the trade at $50 an acre, subject to a mortgage of over $6,000.

The argument that the clause in the contract canceling the personal indebtedness of each partner to the firm evinces an intent to hold out the money on hand and the book accounts from the deal is not convincing. The attorney who makes this claim drew the contract. If he was then acting fairly to both parties, and we doubt not that he so intended, he can hardly assert now that he had this money and these accounts in mind when he inserted the clause, for he undoubtedly knew that neither partner would see in the release of their personal claims an indication that the firm still continued the owner of the money on hand and the accounts. If such an idea entered his mind, he surely would have inquired as to their understanding of the matter. This he did not do. We conclude that the second cause of action was not established, and cannot be under a proper construction of the contract.

The judgment is reversed and the cause remanded with direction to modify the findings so as to accord with this opinion and enter judgment accordingly.